1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

11   1st FINANCIAL SD, LLC, a Nevada Limited )      Case No.: 2:11-cv-00481-RLH-VCF
      Liability Company dba SEED CONSULTING, )
12   LLC, a Nevada Limited Liability Company,  )      **O R D E R**
                                                )
13                     Plaintiff,               )      (Motion for Partial Summary
                                                )      Judgment–#32; Motion for
14         vs.                                  )      Summary Judgment–#33; Challenge
                                                )      to Magistrate Judge's Order–#46)
15   BRAD LEWIS, an individual; ABSOLUTE       )
      INDEMNITY CORPORATION, a Nevada          )
16   Corporation; and CATALYST CREDIT,         )
                                                )
17                     Defendants.              )
      _____ )

18

19         Before the Court is Defendant Brad Lewis' **Motion for Partial Summary**

20   **Judgment** (#32, filed Nov. 28, 2011), Plaintiff 1st Financial SD, LLC d/b/a Seed Consulting's

21   **Motion for Summary Judgment** (#33, filed Nov. 28), and Lewis' **Challenge to Magistrate**

22   **Judge's Order** (#46, filed Jan. 3, 2012).  The Court has also considered the various Oppositions

23   and Replies to these motions.

24                                    **BACKGROUND**

25         This dispute arises out of the business relationship between Brad Lewis, Eric Gantz,

26   and Kevin Tussy.  These men have formed businesses related to mortgages and, more recently,

AO 72
(Rev. 8/82)

1

1   commercial credit consulting services, including Plaintiff 1st Financial.  In the summer of 2009

2   Lewis' relationship with Gantz and Tussy, and thereby 1st Financial, started to deteriorate.  1st

3   Financial alleges that Lewis was not performing as well as he previously had been and that Gantz

4   and Tussy voted to demote him in some way making his pay more directly linked to performance

5   rather than to ownership of the company.

6          Lewis apparently didn't like the change in his position and pay even though he

7   allegedly accepted it at first.  Sometime after the change Lewis began planning a competing

8   business based on the same or similar business model as 1st Financial.  Then on September 10,

9   Lewis demanded to meet with Tussy and Gantz to discuss his role at the company.  That same day,

10  his attorney sent Tussy and Gantz a letter covering many topics including a statement that Lewis

11  intended to "reimburse himself in the amount of $31,500.00 for [Gantz and Tussy's] unauthorized

12  failure to make full payment to [Lewis] as agreed since June 4, 2009."  (Dkt. #38, Resp. Ex. N,

13  Letter dated Sept. 10, 2009.)  Lewis then drove to California where he made two withdrawals from

14  a 1st Financial bank account totaling $20,000.00.

15          After Lewis left 1st Financial he began working on a new implementation of the

16  business model he had worked with at 1st Financial for consumer credit consulting.  To operate

17  this new business 1st Financial alleges that Lewis took the Seed Capital Process, a copyrighted

18  work used by 1st Financial, to his new business Catalyst Credit, and illegally used and distributed

19  it.  Lewis also obtained certain other internal 1st Financial information from a former 1st Financial

20  employee to help him in his new business venture.

21          Lewis filed suit against Gantz, Tussy, and others in California alleging breach of

22  contract, among other things, and seeking dissolution and accounting of the parties various

23  business entities.  Nearly two years after the initiation of that action, 1st Financial filed suit against

24  Lewis here in Nevada alleging: (1) copyright infringement; (2) misappropriation/embezzlement;

25  (3) unjust enrichment; (4) civil RICO; (5) intentional interference with a business; (6) intentional

26  interference with a business (second claim) (7) fraud; (8) intentional interference with a contract;

1   (9) intentional interference with a business relationship; (10) breach of fiduciary duty; and (11)

2   misappropriation of trade secrets.  Now before the Court are three motions: (1) Lewis' challenge to

3   the Honorable Cam Ferenbach's Order denying his motion to compel arbitration; (2) Lewis'

4   motion for partial summary judgment; and (3) 1st Financial's motion for summary judgment.  For

5   the reasons discussed below, the Court denies the motions, but grants summary judgment on the

6   intentional interference with a business claims *sua sponte* because Nevada does not recognize such

7   a cause of action.

8   **DISCUSSION**

9   **I.      Objection/Challenge to Magistrate Judge's Order**

10          Before the Court is an Order (#44) entered by the Honorable Cam Ferenbach,

11   Magistrate Judge, regarding Lewis' Motion to Compel Arbitration (#30).

12          Lewis filed Objections to Magistrate Judge Ferenbach's Order (#44) in accordance

13   with Rule IB 3-1 of the Local Rules of Practice of the United States District Court for the District

14   of Nevada. Seed Consulting filed a Response (#49) to the Objections, and this matter was referred

15   for consideration.  (Lewis also filed a Reply (#51), not authorized by the Local Rules.)

16          The Court has conducted a de novo review of the record in accordance with 28

17   U.S.C. § 636(b)(1)(A), (B), and (C) and Local Rule IB 3-1 and determines that the Order (#44) is

18   not clearly erroneous or contrary to law and should be affirmed.

19   **II.     Motions for Summary Judgement**

20          **A.      Standard**

21          The purpose of summary judgment is to avoid unnecessary trials when there is no

22   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

23   1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when the pleadings, the discovery

24   and disclosure materials on file, and any affidavits "show there is no genuine issue as to any

25   material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v.*

26   *Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis

AO 72
(Rev. 8/82)

1    on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if

2    it could affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*,

3    477 U.S. 242, 248–49 (1986).  Where reasonable minds could differ on the material facts at issue,

4    however, summary judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441

5    (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  "The amount of evidence necessary to raise a

6    genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing

7    versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)

8    (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a

9    summary judgment motion, a court views all facts and draws all inferences in the light most

10   favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d

11   1100, 1103 (9th Cir. 1986).

12            The moving party bears the burden of showing that there are no genuine issues of

13   material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In order to carry

14   its burden of production, the moving party must either produce evidence negating an essential

15   element of the nonmoving party's claim or defense or show that the nonmoving party does not

16   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

17   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the

18   moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to

19   "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.

20   The nonmoving party "may not rely on denials in the pleadings but must produce specific

21   evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

22   *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

23   show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285

24   F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of

25   evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.

26   /

AO 72
(Rev. 8/82)

**B.     Analysis**

Neither 1st Financial nor the Defendants have met their burden of showing that there are no genuine issues of material fact except as to one claim.  Thus, the Court denies both motions except as to 1st Financial's claims for intentional interference with a business, which fails as a matter of law.  The Court will not go into detail on how the parties have failed to meet their burden on each individual claim as it would be a waste of space.  However, the Court will detail some examples of how the parties have failed to meet their burden which are representative of all other claims.  The Court will also explain its grant of summary judgment on the intentional interference with a business claim.

**1.     Copyright Claim**

Both parties move for summary judgment on 1st Financial's copyright claim without providing sufficient evidence to satisfy their burden.  1st Financial relies on metadata[1] in the file [BEL 0051 CC Flowchart], (Dkt. #33, Ex. O, P), and the receipt of an email containing much of the copyrighted work from Catalyst Credit.  First, Plaintiff argues that the metadata establishes that Brad Lewis authored the document.  It does not.  Plaintiff seems to be confused by how metadata works.  The computer does not use the webcam to examine who is at the keyboard typing and designate that person as the author of a document, at least not yet.  Rather, the "author" of a Microsoft Word document is whoever registered the copy of Word (unless someone changes the settings later or goes into the document properties and changes it there).  In fact, here, the metadata also shows that the last time the document was saved (at least before it was burned to the CD 1st Financial submitted to the Court), the logged in user was "garyb," quite possibly Gary Belford.  Interestingly, there is evidence that Gary Belford sent the email from Catalyst Credit that 1st Financial claims contains its copyrighted material, (Dkt. #33, Ex. C, Email from Gary Belford),

---

[1] Metadata is essentially data about data.  In the context of this order it refers to file properties such as "author," "last saved by," "editing time," etc.  Such metadata can be accessed in the properties dialog box for a particular file.  It is generally autogenerated by whatever program creates and edits the file.  However, much metadata can be edited by users.

1  and Belford testified that he took and distributed at least some version of the copyrighted work,

2  (Dkt. #37, Resp. Ex. A, Belford Dep. 139:20-141:20, 144:13-147:15).  Lewis, on the other hand,

3  relies on Belford's admission as evidence to support his motion for partial summary judgment.

4  Belford's admission is insufficient to grant summary judgment to Lewis for two reasons: (1) it is

5  unclear what document Belford is discussing in his deposition, and (2) the file's metadata does

6  create a question of fact as to who originally authored the document.  Thus, the Court denies

7  summary judgment on this claim for all parties.

8            **2.**       **Misappropriation/Embezzlement, Unjust Enrichment and Civil RICO**

9          1st Financial argues that Lewis embezzled money from it.  However, it is unclear to

10  the Court that Lewis does not have a plausible interest in the money he allegedly embezzled due to

11  different events leading up to his withdrawal of the money from 1st Financial's bank account.  If

12  Lewis actually had a right to this money through his agreement with non-parties Grantz and Tussy,

13  then he could not have embezzled the money.  Lewis has also asserted an advice of counsel

14  defense related to his legal right to the funds.  (Dkt. #38, Resp. 9:20-22.)

15          Further, 1st Financial's claim of misappropriation through embezzlement is

16  essentially a necessary predicate to its claims for unjust enrichment and civil RICO.  As to unjust

17  enrichment, 1st Financial would have to show that Lewis was not entitled to the money, which it

18  has not.  As to civil RICO, 1st Financial would have to show that Lewis had criminal intent in

19  taking the money, which it has not.  Without success on its misappropriation claim, the Court

20  cannot grant summary judgment on these other claims at this time.

21            **3.**       **Intentional Interference with a Contract**

22          To prove intentional interference with a contract a party must show: (1) a valid

23  contract, (2) the defendant's knowledge of the contract, (3) actual disruption of the contract, and

24  (4)resulting damage. *J.J. Indus., LLC v. Bennet* 71 P.3d 1264, 1267 (Nev. 2003).  Here, 1st

25  Financial has failed to provide sufficient evidence of actual disruption or damages for the Court to

26  grant summary judgment.  In fact, in its motion, 1st Financial claims that it was able to

AO 72
(Rev. 8/82)

1    successfully conduct business with the person it accuses Lewis of interfering with.  This leads the

2    Court to believe, though there is no evidence one way or the other, that Lewis caused no

3    cognizable damage to this contract.

### 4.      Intentional Interference with a Business

5          The Court grants summary judgment on 1st Financial's intentional interference

6    with a business claim in favor of Lewis because there is no such claim in Nevada.  1st Financial

7    relies on a 5th Circuit case, *Feminist Women's Health Ctr., Inc. v. Mohammad*, 586 F.2d 530, 551

8    (5th Cir. 1978), that the Nevada Supreme Court once cited for a different (though similar)

9    proposition, *Collins v. Union Federal Savings & Loan Ass'n*, 662 P.2d 610, 620 (Nev. 1983)

10   (citing *Feminist Women's Health Center* for an interference with contractual relations claim, not a

11   seperate interference with business claim).  Thus, 1st Financial has presented an insufficient basis

12   for the Court to recognize a cause of action the Nevada Supreme Court has not expressly adopted.

### 5.      Conclusion

14         While the Court does not address each of 1st Financial's claims or arguments, the

15   Court finds its examples sufficient to show that neither 1st Financial nor Lewis have met their

16   burden as to any claim save the interference with business claim.  And the Court only grants

17   summary judgment on that claim because Nevada does not recognize such a claim, not through the

18   demonstration of any uncontroverted facts.

19   /

20   /

21   /

22   /

23   /

24   /

25   /

26   /

AO 72
(Rev. 8/82)

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Challenge to Magistrate Judge's Order (#46) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (#32) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (#33) is DENIED.

IT IS FURTHER ORDERED that the Court *sua sponte* DISMISSES Plaintiff's claims for intentional interference with a business.

Dated: March 20, 2012.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)